## THE JOHN D. DAILEY.

### THE PORT JOHNSON NO. 7.

#### (District Court, E. D. New York. July 30, 1919.)

1. COLLISION ⬤105—BARGES—EVIDENCE.
   Evidence regarding libelant barge's collision with another barge in New York Bay *held* to establish that libelant's tug was solely at fault in failing to keep between the shore and the other barge.
2. ADMIRALTY ⬤91—OPENING DEFAULT.
   The fact that libelant, after securing a default against a tug, shifted its position so as to charge another tug with fault for the collision, does not authorize the court to open the default, in absence of a request to do so and a proper showing.
3. ADMIRALTY ⬤91—LIBEL—OPENING DEFAULT.
   Where a libelant secured a default against a tug, such default will not be opened unless the tug explains why it did not defend the action, and shows that it was not a party to proceedings by which another tug was forced to defend the libel.

In Admiralty. Libel by Clarence L. Bleakley against the steam tug John D. Dailey, with the steam tug Port Johnson No. 7 impleaded, etc. Decree for libelant against the first-named tug, unless an application be made and granted to set aside a default.

Macklin, Brown, Purdy & Van Wyck, of New York City, for libelant.

Park & Mattison, of New York City, for claimant.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

CHATFIELD, District Judge.   This action is brought to recover for damages to the barge Upper Hudson No. 54 from collision with a car float in tow of the tug Port Johnson No. 7 in New York Bay at a point several hundred feet from the float bridges at St. George, Staten Island, on a line between the ferry slip and the Robins Reef Light.   The collision occurred on Sunday morning, January 30, 1916, at about 1:30 a. m.   The John D. Dailey had taken the barge in tow on a hawser between 50 and 60 feet long near Elizabethport, Staten Island, and was bound up through the Kills and up New York Bay to Canal street, North River.   On the way up through the Kill and out into the Bay the tug was following the shore line and proceeding directly into a strong flood tide.   The Port Johnson No. 7 had come out from the float bridges at St. George, Staten Island, drawing a car float loaded with several cars.   When reaching a point several hundred feet from shore the tow line was cast off, the tug dropped back alongside the car float, and remained in that position, drifting with the tide, for some 10 minutes, while the men upon the tug and the car float were making the lines fast, so as to tow the car float alongside the tug.   The men making the car float fast did not follow the direction of the tug captain, and some delay resulted while they were changing these lines and arranging them at the orders of the captain.   During this time the car float and the tug were drifting to the west—that is, toward the Kill—with the flood tide.   The Dailey was observed coming through the Kill towards the Bay and at such a distance from the shore that she would pass inshore of the car float and of the tug, which was then lying upon the starboard side of the car float.   The Dailey blew a one-whistle signal, and the captain of the Port Johnson No. 7 paid no further attention to the Dailey until an alarm was sounded, followed immediately by a collision between the port forward corner of the barge Upper Hudson No. 54 and the port side of the car float near the after corner.

Upon the trial the captain of the Dailey testified that he saw the car float lying still some distance to the north of his course when he blew the one-whistle signal and that thereafter the tug Port Johnson No. 7 commenced to back, thus bringing the car float into collision with the barge.   He testified that the Port Johnson No. 7 did not stop backing until the alarm was sounded by the Dailey.   The Dailey then reversed, so as to attempt to bring the blow against his hawser, instead of against the barge, but did not succeed in so doing, and the collision resulted.

In his statement made to the United States local inspectors the captain of the Dailey, upon the day following the collision, stated that the "after starboard corner of the car float touched the forward port corner of the scow Upper Hudson No. 54"; but the testimony of all the witnesses at the trial shows that this was evidently a mistake, and that the blow was received by the car float on her port side just a few feet forward of the after corner.

The testimony of the captain of the Port Johnson No. 7 and of his engineer is so clear and definite that it must be found as a fact that the engines of the Port Johnson No. 7 were not working astern at any

time before the collision. The car float and the Port Johnson No. 7 could have had no sternway, and could not have been carried by the tide toward the shore, so that the apparent motion of the two boats together must have been caused by the course pursued by the Dailey, which was evidently attempting to save as much distance as possible in bucking the tide, and was intending to pass close around the stern of the car float, so as to reach a point where the Dailey could turn up the bay on the shortest course possible.

[1] No fault is shown on these findings against the Port Johnson No. 7, and the entire responsibility for the collision must rest upon the Dailey, which had initiated the navigation by her one-whistle signal, and which was bound under those circumstances to keep out of the way of the car float. There was sufficient room between the car float and the shore for the Dailey to pass safely, and as the Port Johnson No. 7 was lying still at the time she was under no duty to do anything except remain in that position until the Dailey had passed by.

[2, 3] The action was originally brought by the owners of the scow Upper Hudson No. 54 against the Dailey. The Dailey brought in the Port Johnson No. 7 by petition, alleging that the fault was entirely that of the Port Johnson No. 7, and this petition was answered by the Port Johnson No. 7, alleging in turn that the fault for the collision rested upon the Dailey. When the case was called for trial, the Dailey defaulted and did not appear. The Port Johnson No. 7 thereupon applied to the court for a dismissal of the libel and the petition so far as it was concerned. This application was opposed by the libelant, who then moved to amend its libel by alleging that both the Dailey and the Port Johnson No. 7 were at fault. This motion was conditionally granted, inasmuch as the libelant refused to act upon the default of the Dailey and to allow the petition of the Port Johnson No. 7 to be dismissed. Question was reserved as to the terms upon which the motion of the libelant to amend should be granted.

Upon the finding that responsibility for the collision rested upon the Dailey, decree may be entered dismissing the libel, and also the petition against the Port Johnson No. 7, with costs to the Port Johnson No. 7 against the Dailey, and also against the libelant. Inasmuch as the libelant insisted upon waiving the default of the Dailey at the trial to the extent of asking to amend the libel and to proceed against both, the Dailey was in a position at any time up to the entry of a decree in the case to move to be relieved from its default, and to take such action as it might be advised; but no such application has been made. The Dailey has allowed the default to stand. The libelant, while seeking to prove liability against the Port Johnson No. 7, not only produced no witnesses against the Dailey, but actually called the captain of the Dailey as the only witness on behalf of the libelant against the Port Johnson No. 7. While doing this the libelant, however, amended the libel in such shape that fault was alleged against the Dailey and also against the Port Johnson No. 7, and then proceeded to contradict the allegation of fault against the Dailey by presenting to the court the testimony of the captain of the Dailey as a true statement of the occurrence as between the libelant and the Dailey.

The libelant should not be allowed to thus blow hot and cold; but .as the Dailey has made no effort to change the situation, and has apparently allowed the libelant to shift his position as occasion might suggest, there is no reason for the court to open the Dailey's default, or to direct a decree in favor of the libelant against the Dailey. The findings that the libelant's barge was damaged through the fault of the Dailey must stand. If the Dailey persists in its attitude of offering no defense to the action, the libelant will be entitled to a decree against the Dailey upon proper notice of application for such decree. . If the Dailey seeks now to open its default, it not only must explain why it · took no part in defending the action, but must also show that it has not been a party to the proceedings, by which the libelant has been enabled to force the Port Johnson No. 7 to defend the action, and at the same time has allowed the libelant to apparently waive or ignore his cause of action against the Dailey, but leaving the case in such a situation that he could not enter a decree against the Dailey.

This matter will be disposed of upon the application of the libelant for a decree, of which application the Dailey must have notice. No ·costs will be allowed to the libelant.